George L. Cobb, J.
This proceeding is brought pursuant to section 213 (subd. [a], cl. [ii]) of the Civil Service Law to enforce an order of the petitioner New York State Public Employment Relations Board (hereinafter PERB) which directed the respondent Sheriff of Ulster County (hereinafter Sheriff) to execute a contract embodying the terms and conditions agreed upon in the memorandum of understanding of December 12, 1972.
After it had been determined by the Appellate Division of this department (see Matter of County of Ulster v. CSEA, Ulster County, 37 A D 2d 437) that Ulster County (hereinafter County) and the Sheriff were joint public employers of the Ulster County deputy sheriffs (hereinafter deputies), the Ulster County Chapter of Civil Service Employees Association, Inc. (hereinafter CSEA) was certified by PERB as the bargaining representative for all of the deputies pursuant to the applicable statutes (Civil Service Law, § 205, subd. 5, par. [c]; § 206; § 207). Thereafter CSEA, as was its right under section 203 and section 208 (subd. 1, par. [a]) of the Civil Service Law, sought an agreement with public employers by negotiating collectively concerning the terms and conditions of employment of the public *1074 employees it represented. Although the Sheriff did not attend the first few bargaining sessions, he was present in person at all of the remaining sessions, including the December 12, 1972 session. However, at no time did he personally negotiate with the representatives of OSEA.
At the session held on the evening of December 12, 1972 it seemed apparent, at least to the County and CSEA, that an agreement had been reached with the public employers, but thereafter, the Sheriff refused'to sign a formal agreement reflecting the understanding which CSEA says had been reached upon claims that the County, negotiating team had not represented him in the negotiations which led to the said agreement, and that he had never assented thereto. CSEA therefore, charged the Sheriff with an improper employer practice and, in due course, a hearing was conducted thereon by a hearing examiner appointed by PERB. Thereafter, said examiner ruled in favor of the Sheriff but upon appeal, PERB found that the Sheriff’s refusal to sign the said written agreement was an improper employer’s practice and issued the order here under review.
An aggrieved party may obtain judicial review of a PERB order either by instituting a proceeding pursuant to CPLR article 78 within 30 days after service upon such party of a copy of the order to be reviewed (Civil Service Law, § 213, subd. [a], cl. [i]) or, if an enforcement proceeding is instituted by PERB within the said 30-day period by raising in his answer the questions authorized by CPLR 7803 (Civil Service Law, § 213, subd. [c]). Among other things, the Sheriff in his answer in this enforcement proceeding has raised some of the questions specified in CPLR 7803, but PERB says that the . expiration of the 30-day period bars any court determination of the merits of such questions.
Pursuant to said subdivision (a) of section 213 of the Civil Service Law, the aforesaid 30-day period for the institution of review proceedings is measured from the service upon the party aggrieved by certified or registered mail of a copy of the PERB order to be reviewed. A copy of the instant order of PERB was served on the Ulster County Attorney on December 11, 1973 by certified mail. Said attorney, by counsel, had appeared for the Sheriff at the hearing conducted by the hearing examiner and also upon the appeal of the hearing examiner’s ruling to PERB. PERB says that service of the copy of the order on said County Attorney was service on ‘ ‘ such party ” within the meaning of the statute and that said event marked the commencement of the said *1075 30-day period. In support thereof PERB cites CPLR 2103 and section 168 of the Executive Law. In passing, the court notes that PERB has not promulgated specific regulations concerning the manner of service of papers in proceedings conducted before it. (Cf. 12 NYCRR 255.3.)
CPLR 2103 (subd. [b]) says, in part, that “ papers to be served upon a party in a pending action shall be served upon his attorney ”, hut since the said order was issued in an administrative proceeding rather than an action, the provisions of CPLR 2103 are inapplicable.
Section 168 of the Executive Law says, in part, that when a person is involved as a party in a proceeding before a body like PERB and an attorney at law has filed a notice of appearance in the proceeding on behalf of said person “ a copy of all subsequent written communications or notices to such person in such proceeding (other than subpoenas) shall be sent to such attorney at law, and if any such subsequent written communication or notice is sent to the party in the proceeding, a copy of the same shall be sent to the attorney at law at the same time.” The court interprets the quoted language as equating service upon a party’s attorney with service directly on the party and, therefore, the 30-day statutory period began on December 11, 1973 and ended on January 10, 1974 which latter date was well before the date this proceeding was instituted. Accordingly, PERB’s order is no longer subject to judicial review.
In addition to seeking a judicial review on the merits of the hereinabove described proceeding before PERB, the Sheriff seeks to raise by his answer other issues which have been resolved by either the enactment of the Taylor Law or by determinations of the courts or PERB which became final in the absence of any timely appeal. The Sheriff also argues, apparently for the first time, that he should not be time barred from contesting the said action of PERB because the Ulster County Attorney had a “ conflict of interest ” in that at that time the Sheriff was in “ ‘ combat ’ against the County ”. Further, he accuses the said attorney of putting off his inquiries as to his right to appeal the said order until the time to do so had expired. Since the County Attorney appeared for the Sheriff in the proceedings before PERB, until otherwise notified CSEA and PERB were entitled to assume that said attorney had full authority to conduct all aspects of the proceedings, including receiving notice of the making of the order (Hendry v. Hilton, *1076 283 App. Div. 168). At this late date the Sheriff cannot nullify the legal consequences of the due and proper service of the said order by claiming the attorney who appeared for him and tried his case did not have authority to do so.
Although not raised specifically by the Sheriff, the brief of PERB’s counsel discusses the question of whether or not the power of PERB to deal with an improper labor practice contained in section 205 (subd. 5, par. [d]) of the Civil Service Law which power under the statute is limited to ‘ ‘ the entry of an order directing the public employer or employee organization to negotiate in good faith ” is nevertheless broad enough to authorize the kind of order here under review. In support of his position, such counsel cites Matter of New York State Labor Relations Bd. v. Roosevelt Chevrolet Co. (177 Misc. 468) wherein the court (p. 475) quoted with approval from Heinz Co. v. National Labor Relations Bd. (311 U. S. 514, 526), as follows:
“ A business man who entered into negotiations with another for an agreement having numerous provisions, with the reservation that he would not reduce it to writing or sign it, could hardly be thought to have bargained in good faith. This is even more so in the case of an employer who, by his refusal to honor, with his signature, the agreement which he has made with a labor organization, discredits the organization, impairs the bargaining process, and tends to frustrate the aim of the statute to secure industrial peace through collective bargaining.
“ Petitioner’s refusal to sign was a refusal to bargain collectively and'.an unfair labor practice.” The court knows of no ease authority expressing a contrary view but believes one further point requires attention.
If, in enacting a new statute, the legislative body uses language which has been used in an existing statute, the construction courts have already given such language should be given “ due consideration * * * in passing upon the construction to be given to the language ” [of the new statute]. (Matter of De Filippis v. Falkenberg, 170 App. Div. 153, 157, affd. 219 N. Y. 581.) It seems likely that, in order to avoid this rule of construction and to prevent the automatic application in the public sector of the rulings already made in the private sector, the Taylor Law used new terms for old concepts, i.e., “ negotiate collectively ” (Civil Service Law, § 203) rather than “ bargain collectively” (Labor Law, § 703) and “ improper practice ” (Civil Service Law, § 209-a, subds. 1, 2) instead of “ unfair labor practice ” (Labor Law, § 704). Furthermore, subdivision 3 of section 209-a of the Civil Service Law says explicitly *1077 that in applying that section, fundamental distinctions between private and public employment shall be recognized, and no body of Federal or State law applicable wholly or in part tó private employment1 ‘ shall be regarded as binding or controlling precedent ”.
Notwithstanding the foregoing, the logic of the language quoted from Heinz Co. (supra) compels the conclusion that a refusal to enter into a written agreement which accurately expresses the settlement reached in labor negotiations would be a refusal to negotiate collectively as well as a refusal to bargain collectively. In short, the rule of Heinz Co. (supra) is equally applicable in both the public and private sector.
The prayer of the petition will be granted.