In the Matter of NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD, Appellant, v. BOARD OF EDUCATION OF THE CITY OF BUFFALO, Respondent, and DISTRICT COUNCIL OF BUFFALO AND VICINITY, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO, et al., Intervenors-Appellants.

Fourth Department, January 28, 1975.

*Martin L. Barr* (*Jerome Thier* of counsel), for appellant.

*Anthony Manguso, Corporation Counsel* (*Carl Tronolone* of counsel), for respondent.

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (*Lawrence Schulz* of counsel), for Buffalo Building Trades Council of Bd. of Education Employees, intervenor-appellant.

*McMahon & Crotty* for District Council of Buffalo and Vicinity, intervenor-appellant.

CARDAMONE, J.   We are called upon to decide whether the remedy fashioned by the Public Employment Relations Board (PERB) — where it ordered public employees of the Board of Education of the City of Buffalo (Board of Education) restored to the position which they had occupied prior to the change of civil service status together with any compensation which they may have lost and with 3% interest thereon — exceeded the powers granted to PERB under article 14 of the Civil Service Law entitled Public Employees' Fair Employment Act and commonly known as the Taylor Law.[1]

There are two cases involved in this appeal.   The first case is No. U–0659 in which the charging party is the Buffalo Building Trades Council of the Board of Education Employees (Building

---

1. Referred to hereafter as "Fair Employment Act" or merely "Act".

Trades). In the second case, No. U-0667, the charging party is the District Council of Buffalo and Vicinity, United Brotherhood of Carpenters and Joiners of America, AFL-CIO (Carpenters).

PERB determined that the Board of Education's unilateral change of the civil service status of its employees in the first case (Building Trades) and the method of determining wages constituted a violation of section 209-a (subd. 1, pars. [a], [d]) of the Act. It, therefore, made an order which directed respondent Board of Education to cease and desist from: (1) (a) refusing to negotiate with the charging party (Building Trades); (b) engaging in negotiations with individual employees represented by the charging party; (c) unilaterally changing terms and conditions of employment of employees represented by the charging party and finally, (2) ordered respondent to restore the *status quo ante* and compensate the employees for any wages lost as a result of the change in method of compensation with 3% interest thereon. PERB also found a violation of section 209-a (subd. 1, par. [a]) in the second case (Carpenters) and made an order which directed the Board of Education to: (1) cease and desist from negotiating individually during the pendency of the question concerning representation with those of its employees whom the charging party seeks to represent; (2) cease and desist from unilaterally changing the civil service status of those of its employees whom the charging party seeks to represent and the method of determining their wages; (3) restore the civil service *status quo ante* of those of its employees whom the charging party seeks to represent; and (4) compensate those of its employees whom the charging party seeks to represent for any wages lost as a result of the unilateral change in method of compensation with interest of 3% thereon.

PERB's orders were dated September 20, 1973. Respondent Board of Education received notice of them on September 24, 1973, but it did not seek review within 30 days as authorized by section 213 (subd. [a], par. [i]) of the Act. Thereafter, pursuant to this same section (subd. [a], par. [ii]) on November 21, 1973 PERB instituted a proceeding to obtain enforcement of its order in Erie County Supreme Court. Although Special Term granted enforcement of the " cease and desist " provisions of PERB's order, it concluded that there was insufficient proof of interference or coercion and denied enforcement of all the other provisions of the order. We believe that Special Term incorrectly concluded that it had inherent unlimited power to review the merits in each of these cases, instead of the more limited scope of review prescribed in the Act.

Under section 213 of the Fair Employment Act the Legislature has provided a scheme for judicial review and enforcement of orders of PERB. An aggrieved party may obtain judicial review of a PERB order either by instituting a proceeding pursuant to CPLR article 78 within 30 days after service upon such party of a copy of the order to be reviewed (§ 213, subd. [a], par. [i]) or, if an enforcement proceeding is instituted by PERB within the said 30-day period by raising in its answer the questions authorized by CPLR 7803 (§ 213, subd. [c]). Since the Board of Education failed to bring a timely article 78 proceeding and PERB commenced its special proceeding after the expiration of the 30-day period, the Board of Education was, thereby, precluded from raising questions authorized by CPLR 7803 (Fair Employment Act, § 213). Thus, the scope of Special Term's review, in these cases, given a violation of section 209-a (subd. 1, par. [a]) in Case No. U-0667 (Carpenters) and violations of section 209-a (subd. 1, pars. [a], [d]) in Case No. U-0659 (Building Trades), was limited to whether PERB's orders were a proper exercise of its remedial power. "Even where judicial review is proscribed by statute, the courts have the power and duty to make certain that the administrative official has not acted in excess of the grant of authority given him by statute or in disregard of the standard prescribed by the legislature". (*Matter of Guardian Life Ins. Co.* v. *Bohlinger*, 308 N. Y. 174, 183.)

We turn, therefore, to a brief consideration of the powers vested in PERB and the rights granted public employees under the terms of the Act. PERB has, and it rightly should have, broad powers in insuring the harmonious relationship between government and its employees. Legislative policy holds that this is best effectuated by granting, among other things, public employees the right to representation and requiring political subdivisions to negotiate with and enter into written agreement with employees' organizations representing organized public employees (Fair Employment Act, § 200). It should be kept in mind that embodied in the statute (Fair Employment Act, § 200, subd. [e]; § 210) is a prohibition against public employees striking. A strike is, of course, the most powerful economic weapon possessed by public employees and its loss was balanced by insuring to the public body (PERB) created by the same Act (§ 205) broad powers to carry out the policy of the law. Further, section 205 (subd. 5, par. [l]) grants to PERB, in addition to the powers and functions provided in other sections of Article 14 of the Act, the right to " exercise such other powers,

as may be appropriate to effectuate the purpose and provisions of this article ''. Further, with respect to the rights of public employees, the statute specifically grants them the right to join an employee organization of their own choice (§ 202), and to be represented by employee organizations which will negotiate collectively with public employers with respect to their terms and conditions of employment (§ 203). Once an employee organization has been recognized or certified, the Act mandates that the public employer '' shall be, and hereby is, required to negotiate collectively with such employee organization '' in the determination of the terms and conditions of employment of the public employees (§ 204).

We believe that the relief fashioned by PERB to remedy the violations found in both cases including its affirmative provisions restoring these employees to *status quo ante,* together with compensation lost, if any, with 3% interest thereon, was a reasonable exercise of the exclusive authority granted PERB to remedy infringement of public employees' rights under the statute (Fair Employment Act, § 205, subd. 5, pars. [d], [l]) (*Matter of City of Albany* v. *Helsby,* 29 N Y 2d 433).

Finally, we note that the charging parties in each of these cases were denied the right of full intervention and appeared *amicus curiae.* While no section of the Act authorizes intervention in enforcement proceedings, such is permitted in proceedings before PERB and once permitted the employee organization becomes a party for all purposes (4 NYCRR 201.7 [d]). The CPLR provides that a person shall be permitted to intervene in any action '' when the representation of the person's interest by the parties is or may be inadequate and the person is or may be bound by the judgment '' (CPLR 1012, subd. [a], par. 2). In these cases where the interests of PERB and the public employees' representatives are not identical, the employees' organizations' full intervention is required to insure complete litigation of its interests in the judicial forum (see *Trbovich* v. *Mine Workers,* 404 U. S. 528; *Auto Workers* v. *Scofeld,* 382 U. S. 205; *Matter of Jefferson County Bd. of Supervisors* v. *New York State Public Employment Relations Bd.,* 44 A D 2d 893).

The judgment should be reversed and an order of enforcement granted.

MARSH, P. J., WITMER, SIMONS and GOLDMAN, JJ., concur.

Judgment unanimously reversed on the law without costs and petition for enforcement granted.