In the Matter of CITY OF ALBANY, Petitioner, v ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board, Respondents, and ALBANY POLICE OFFICERS UNION, LOCAL 2841, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Intervenor-Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Employment Relations Board, which found that petitioner had violated section 209-a (subd 1, pars [a], [d]) of the Civil Service Law. On November 14, 1974 the Albany Police Officers Union filed an improper practice charge against the City of Albany, alleging that the city's police department had instituted a new tardiness rule which violated each paragraph of subdivision 1 of section 209-a of the Civil Service Law. A formal hearing was conducted before a hearing officer designated by PERB, and on January 27, 1976 PERB issued a decision and order confirming the findings of fact and conclusions of law of the hearing officer. This proceeding then ensued. The police department had a long-standing rule of conduct that "each and every member of the police force shall be punctual in attendance". The hearing officer found, on the basis of substantial testimony, that prior to September 20, 1974 the police department's usual response to relatively frequent cases of tardiness was a verbal reprimand by a superior officer. On September 20, 1974, only two days after the intervenor-respondent union was elected bargaining representative for all patrolmen and detectives employed by the department, an event occurred which signaled a major change in this policy regarding tardiness. The union president reported late for work and was formally charged with "neglect of duty" (Civil Service Law, § 75). Thereafter all who came in late were similarly subjected to formal charges. On October 17, 1974, the union submitted contract proposals to the city which included provisions concerning "discipline and discharge" as well as "department rules and regulations". On November 6, 1974, the department issued the so-called "November rule" which provided, among other things, that the first occurrence of tardiness would result in a fine of at least three hours' pay, unless excused by the Commissioner of Public Safety and the Chief of Police, and provided for further penalties for subsequent incidents. On November 13, 1974 the city responded to the union's contract proposals by taking the position that "discipline" and "work rules" were nonnegotiable. The hearing officer, on the basis of a conclusion that antiunion animus was the motivation behind the city's actions, found that the September change in policy and the "November rule" violated section 209-a (subd 1, par [a]) of the Civil Service Law, which provides that it is an improper practice for a public employer to deliberately "interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section two hundred two [to unionize] for the purpose of depriving them of such rights". He further found that the city's unilateral imposition of the November rule and its refusal to negotiate with respect thereto violated section 209-a (subd 1, par [d]) of the Civil Service Law, which provides that it is an improper practice for a public employer to deliberately "refuse to negotiate in good faith with the duly

recognized or certified representatives of its public employees". The PERB decision and order of January 27, 1976, confirming the hearing officer's findings of fact and conclusions of law, directed the city to rescind the mandatory fine rule and return the fines already collected, to cease and desist from unilaterally changing existing work rules or instituting new work rules, to comply with article 14 of the Civil Service Law, to negotiate in good faith with the union and to conspicuously post notices informing its employees of its intention to comply with the decision and order. On this appeal, as we recently stated in *Matter of Sag Harbor Union Free School Dist. v Helsby* (54 AD2d 391), we must accord the hearing officer "broad powers to appraise, correlate and evaluate facts" and the findings of the officer "should not be disturbed if supported by a rational basis" *(supra,* p 394; see, also, *Matter of Pell v Board of Educ.,* 34 NY2d 222; *Matter of Kopec v Buffalo Brake Beam-Acme Steel & Malleable Iron Works,* 304 NY 65). We see no particular reason in this record for the institution by the city, in September and November, 1974, of new rules concerning the tardiness of its police officers. There is no indication, for example, of any sudden increase in tardiness. As such, we are compelled to conclude that there is substantial evidence to support the finding of the hearing officer, confirmed by PERB, that changes in policy regarding lateness for work very shortly after the union election, with the union president being among the first disciplined under the new policy, were motivated to at least some extent by antiunion bias. The finding of interference with the right to unionize must, therefore, be sustained (Civil Service Law, § 209-a, subd 1, par [a]). Subdivision 2 of section 204 of the Civil Service Law requires public employers to negotiate collectively with employee organizations as to "the terms and conditions of employment". The determination herein that the November rule involved a term and condition of employment, since it involved discipline and work rules, is consistent with PERB's previous statements that discipline is a mandatory subject of negotiations *(Matter of City of Albany v Albany Police Officers Union, Local 2841, AFSCME, AFL-CIO,* 7 PERB 3078; *Matter of Somers Faculty Assoc. v Somers Cent. School Dist.,* 9 PERB 3014). PERB's conclusions as to what is and is not a term and condition of employment "is to be accepted if not unreasonable" *(Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46, 51). The finding that the city was guilty of an improper practice in refusing to negotiate in good faith on the issue of punishment for lateness must, therefore, also be sustained (Civil Service Law, § 209-a, subd 1, par [d]). The city has failed to reply to PERB's counterclaim for enforcement of its order. In enforcement proceedings, our review is limited to determining whether PERB's orders were a proper exercise of its remedial power *(Matter of New York State Public Employment Relations Bd. v Board of Educ.,* 46 AD2d 509, 512, affd 39 NY2d 86). The remedy imposed by PERB appears to be a reasonable exercise of its power. Determination confirmed, petition dismissed, and application for enforcement granted, without costs. Koreman, P. J., Mahoney, Main, Larkin and Herlihy, JJ., concur.